UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**
#62 (2/18)

### CIVIL MINUTES - GENERAL

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   **The Court GRANTS Defendants' motion for summary judgment.**

Before the Court is a motion for summary judgment filed by Defendants Bio-Medical Applications of Mission Hills, Inc. ("BMA Mission Hills") and Fresenius Management Services, Inc. ("Fresenius") (collectively, "Defendants"). *See generally* Dkt. # 62-1 ("*Mot.*").[1] Plaintiff Dolores Calderon ("Plaintiff") opposed, *see generally* Dkt. # 80 ("*Opp.*"), and Defendants replied, *see generally* Dkt. # 88 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving, opposing, and reply papers, the Court **GRANTS** Defendants' motion.

I.      Background

This is an employment discrimination case. As an initial matter, the parties dispute whether Plaintiff was employed by only BMA Mission Hills or also by Fresenius. *Defendants' Separate Statement of Uncontroverted Facts*, Dkt. # 62-2 ("*DSUF*"), ¶ 1; *Plaintiff's Statement of Genuine Issues*, Dkt. # 80-2 ("*PSGI*"), ¶ 1. The Court assumes for purposes of this motion that Plaintiff was employed by both Defendants.

A.      Plaintiff's Hiring and Job Duties as a Patient Care Technician

Plaintiff was hired as a full-time patient care technician at Defendants' Mission Hills dialysis clinic ("Mission Hills clinic") in 2007. *See DSUF* ¶ 1; *PSGI* ¶ 1; *Defendants' Excerpts of Videotaped Zoom Deposition of Dolores Calderon*, Dkt. # 62-4, Ex. 1 ("*Calderon Depo.*

---

[1] The Court cites Defendants' memorandum in support of their motion because it contains Defendants' substantive arguments. Defendants' motion itself is Docket Entry # 62.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

*Excerpts 1*"), 13:24–14:14; Dkt. # 82, Ex. A.  In 2010, Plaintiff signed a job description for the patient care technician role.  *DSUF* ¶ 2; *PSGI* ¶ 2; *see* Dkt. # 62-4, Ex. 3.  The job description lists a series of "principal responsibilities and duties" under the categories of "patient care," "maintenance/technical," and "clerical & administrative."  *See* Dkt. # 62-4, Ex. 3.  It then sets forth "physical demands and working conditions" for the role, stating in relevant part:

> The physical demands and work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job.  Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions. . . .  The position provides direct patient care that regularly involves heavy lifting and moving of patients, and assisting with ambulation.  Equipment aids and/or coworkers may provide assistance.  This position requires frequent, prolonged periods of standing and the employee must be able to bend over.  The employee may occasionally be required to move, with assistance, machines and equipment of up to 200 lbs., and may lift chemicals and water solutions of up to 30 lbs. up as high as 5 feet.  There is a two-person assist program and "material assist" devices for the heavier items.

*See id.*  The job duties for Plaintiff's patient care technician role remained the same throughout her employment.  *See Calderon Depo. Excerpts 1* 103:20–104:8.

Mission Hills clinic manager Mahwish Akram ("Akram") testified that, "[i]n simple terms," the essential functions of a patient care technician are "taking care of patients and providing care."  *Plaintiff's Excerpts of Web Conferencing Deposition of Mahwish Akram*, Dkt. # 82, Ex. G ("*Akram Depo. Excerpts 1*"), 48:23–49:3.  Director of operations Robert Hayden ("Hayden") testified that the "primary responsibilities and core functions" of a patient care technician include bending, walking, and squatting for prolonged periods of time, including to tend to patients and retrieve items from around the dialysis station.  *See Defendants' Excerpts of Zoom Video Deposition of Robert Hayden*, Dkt. # 62-4, Ex. 12 ("*Hayden Depo. Excerpts 1*"), 30:17–31:9.

Plaintiff testified that her daily job duties included assisting multiple patients in and out of wheelchairs and lifting chemical and water solutions of up to 30 pounds as high as five feet several times.  *Calderon Depo. Excerpts 1* 105:22–108:5, 108:22–109:20.  She also testified that, in a typical workday, she spent more than seven hours standing and fewer than two hours sitting.  *Id.* 109:21–110:16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

B.  Plaintiff's Workplace Injury and Modified Job Duties

Plaintiff injured her back at work in March 2014.  *Plaintiff's Statement of Additional Facts*, Dkt. # 80-1 ("*PSAF*"), ¶ 73; *Defendants' Reply to Plaintiff's Statement of Additional Facts*, Dkt. # 88-4 ("*DRPS*"), ¶ 73.  She then filed a workers' compensation claim and took a leave of absence.  *See DSUF* ¶¶ 5–7; *PSGI* ¶¶ 5–7; *PSAF* ¶ 73; *DRPS* ¶ 73.  The settlement of her workers' compensation claim included that Plaintiff would return to work on modified duty with no heavy lifting, based on the findings of the medical examiner.  *PSAF* ¶ 73; *DRPS* ¶ 73. The medical examiner issued a supplemental report clarifying that Plaintiff "shouldn't lift more than about 20-25 pounds" on a regular basis, "should never lift more than 40 pounds," and "should not do repetitive bending or stooping as part of her regular job activities."  *See* Dkt. # 82, Ex. C; *PSAF* ¶ 73; *DRPS* ¶ 73.  Plaintiff's doctor then issued a note including the following restrictions: "no heavy lifting," "no repetitive bending, pulling, stooping, standing, [or] twisting," and "no prolonged walking."  Dkt. # 82, Ex. D at 1; *PSAF* ¶ 73; *DRPS* ¶ 73.

It is undisputed that upon her return to work in 2015, Plaintiff was offered and accepted modified job duties, including no heavy lifting.  *DSUF* ¶ 8; *PSGI* ¶ 8.  However, Plaintiff testified that her job duties were not actually modified.  *See Plaintiff's Excerpts of Videotaped Zoom Deposition of Dolores Calderon*, Dkt. # 82, Ex. J ("*Calderon Depo. Excerpts 2*"), 126:1–13.  Yet, she also testified that she was never instructed to perform job duties that violated her work restrictions.  *Calderon Depo. Excerpts 1* 130:12–15.

On September 25, 2019, Plaintiff's doctor issued a note with the following modified work restrictions: "[n]o lifting/carrying 10 lbs," "no prolonged standing/walking," "no bending, stooping, climbing," and "no kneeling, squatting, or crawling."  *See* Dkt. # 62-4, Ex. 7 at 3. Plaintiff declares that after each visit with her doctor, she would "immediately provide" an updated doctor's note to her manager.  *Declaration of Dolores Calderon*, Dkt. # 82 ("*Calderon Decl.*"), ¶ 10.

Sometime in September 2019, shortly after Akram began working at the Mission Hills clinic, Plaintiff informed Akram that she wanted to be accommodated.  *PSAF* ¶ 79; *DRPS* ¶ 79; *see Akram Depo. Excerpts 1* 65:16–66:2.  Upon request, Plaintiff provided Akram with her doctor's note outlining her work restrictions.  *PSAF* ¶ 79; *DRPS* ¶ 79.  Plaintiff contends that she gave Akram the September 25, 2019 note with her modified restrictions.  *See PSGI* ¶ 14.  When Akram asked Plaintiff why she was performing duties outside of her restrictions, Plaintiff responded that others were not helping her.  *Akram Depo. Excerpts 1* 74:3–13.  Akram and Plaintiff discussed Plaintiff's restrictions weekly, and Akram reminded Plaintiff to wait for help when needed and to let Akram know if she encountered problems instead of working outside her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

restrictions. *Id.* 79:5–13, 82:14–25.

At her deposition, Plaintiff responded "[n]o" to the following question:

[I]f the Mission Hills clinic considered all of your restriction[s] and continued to keep you in a . . . [patient care technician] role but [] not require you to do any lifting, did not require you to do any prolonged standing or walking, did not require any bending or stooping or climbing, and did not require you to do any kneeling, squatting or crawling, in your opinion, would you be able to perform the patient care duties without being able to do any of hose things combined with the not[] being able to lift over ten pounds?

*Calderon Depo. Excerpts 1* 169:24–170:9.

C.    Defendants' Accommodation Policies

Human resources business partner Rena Battles-Singleton, now Rena Lyons ("Lyons"), testified that "[u]nder the normal [Americans with Disabilities Act] process," Defendants' employees receive a questionnaire and job description to give to their medical providers to fill out. *Plaintiff's Excerpts of Videotaped Deposition of Rena Battles-Singleton*, Dkt. # 82, Ex. E ("*Lyons Depo. Excerpts 2*"), 80:4–10. After receiving the questionnaire, Defendants' human resources team meets with the operations team, including the manager of the clinic the employee works at, to determine whether the employee's requested accommodations can be accommodated at the clinic. *Id.* 80:19–81:1. The clinic manager then informs the employee whether the accommodations can be provided and may give the employee a memorandum or letter confirming this determination. *Id.* 81:3–11. Accommodations offered to an employee are reflected in a "job offer." *Id.* 88:11–13.

Lyons did not give Plaintiff a questionnaire and job description for her doctor to fill out and is unaware if anyone else did. *Id.* 82:6–14. Akram is also unaware if anyone sent Plaintiff's doctor forms to complete. *PSAF* ¶ 84; *DRPS* ¶ 84.

Defendants also work with third-party vendor Sedgwick to handle leave and accommodation requests. *See Akram Depo. Excerpts 1* 30:2–4; *Plaintiff's Excerpts of Zoom Video Deposition of Robert Hayden*, Dkt. # 82, Ex. F ("*Hayden Depo. Excerpts 2*"), 81:13–22. Hayden testified that although managers can open a case with Sedgwick on an employee's behalf, this "is typically [done in] an emergen[cy] situation," such as when the employee is unable to contact human resources or a "significant event prevent[s] them from opening their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

own case." *Hayden Depo. Excerpts 2* 80:24–81:3.

Sedgwick was not involved in Plaintiff's accommodation process. *PSAF* ¶ 103; *DRPS* ¶ 103. Hayden testified that this was because Plaintiff had not opened a case with Sedgwick. *Hayden Depo. Excerpts 2* 81:20–24. Akram also did not open a case with Sedgwick on Plaintiff's behalf, *id.* 81:4–6, but she suggested to Plaintiff "at least a couple times" that she contact Sedgwick about her accommodations and provided Plaintiff with the telephone number, *Akram Depo. Excerpts 1* 121:7–20, 132:14–18.

### D.    Defendants' 2020 Review of Plaintiff's Restrictions

In February 2020, the Mission Hills clinic went into "mitigation status" because it was neither operationally nor financially sound. *DSUF* ¶ 21; *PSGI* ¶ 21. The clinic's operational needs did not change during mitigation. *PSAF* ¶ 88; *DRPS* ¶ 88.

As part of the mitigation process, Hayden met with Akram on February 18, 2020 to discuss the clinic's staffing needs. *See DSUF* ¶¶ 22–23; *PSGI* ¶¶ 22–23. This was Hayden's first visit to the Mission Hills clinic and the first time Hayden learned of Plaintiff's work restrictions. *See Hayden Depo. Excerpts 1* 28:3–12, 31:12–17. Hayden testified that he and Akram discussed concerns that Plaintiff was not following her work restrictions and that her new restrictions were hindering the clinic's operational needs because she was unable to perform her primary work responsibilities without help from her coworkers, who had their own patients to care for. *See id.* 28:13–29:11, 30:17–32:17, 48:9–16. Specifically, Akram informed Hayden that Plaintiff was unable to transfer patients, clean stations, or manage the supply room based on her restrictions. *Id.* 48:1–16, 53:25–54:6. Plaintiff's restrictions also prohibited her from carrying acid baths for patients. *Id.* 71:1–22. Akram testified that she and Hayden also discussed the increased number of patients at the Mission Hills clinic and the clinic's need for patient care technicians to perform the full range of duties to meet patient needs. *Akram Depo. Excerpts 1* 127:3–11. Hayden told Akram that they would have to review Plaintiff's restrictions with human resources. *Hayden Depo. Excerpts 1* 34:15–20.

The same day, Hayden sent an e-mail to human resources employee Theresa Hogan Woodman ("Woodman"), stating in relevant part, "My hope is we can make the case that the business can no longer support these accommodations yet would appreciate your guidance on how to proceed." *See* Dkt. # 82, Ex. H. The e-mail included a copy of Plaintiff's September 25, 2019 doctor's note with her modified work restrictions. *See id.*

Hayden then collaborated with Akram, Lyons, and risk manager Debbie Lillibridge to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

review Plaintiff's case as an "operations team." *See DSUF* ¶ 24; *PSGI* ¶ 24; *Defendants' Excerpts of Videotaped Deposition of Rena Battles-Singleton*, Dkt. # 62-4, Ex. 11 ("*Lyons Depo. Excerpts 1*"), 48:14–4, 57:10–23; *see also Declaration of Rena Lyons*, Dkt. # 62-4 ("*Lyons Decl.*"), ¶¶ 5–6. Hayden testified that the operations team reviewed Plaintiff's restrictions and "looked at any different way we could accommodate" them. *Hayden Depo. Excerpts 1* 53:20–24, 56:10–18, 82:20–83:3.

Akram, Hayden, and Lyons ultimately determined that Plaintiff could no longer be accommodated as a patient care technician at the Mission Hills clinic. *Defendants' Excerpts of Web Conferencing Deposition of Mahwish Akram*, Dkt. # 62-4, Ex. 10 ("*Akram Depo. Excerpts 2*"), 95:14–96:24, 97:11–23, 125:4–15. Akram testified that this was partly because of the Mission Hills clinic's increased patient load and the need for more patient care technicians who could perform their full job duties. *Akram Depo. Excerpts 1* 129:14–22. Lyons testified that due in part to staffing shortages related to the COVID-19 pandemic, the Mission Hills clinic was no longer able to have other patient care technicians assist Plaintiff with her job duties. *Lyons Depo. Excerpts 1* 42:25–44:3. Yet, Hayden testified that neither the COVID-19 pandemic nor the Mission Hill clinic's finances had anything to do with whether Plaintiff could be accommodated. *Hayden Depo. Excerpts 2* 67:20–68:4, 103:13–16. Nor did the clinic's mitigation status. *PSAF* ¶ 116; *DRPS* ¶ 116. Akram and Lyons reached out to managers of other nearby clinics to see if any had open positions available that could accommodate Plaintiff's restrictions. *Akram Depo. Excerpts 2* 58:3–10; *Lyons Depo. Excerpts 1* 49:24–50:5. However, none were available. *Hayden Depo. Excerpts 1* 91:4–9; *Lyons Decl.* ¶ 7.

On March 16, 2020, Akram and Hayden met with Plaintiff to inform her that her restrictions could no longer be accommodated at the Mission Hills clinic and explained three other options available to Plaintiff. *See PSAF* ¶ 111; *PSGD* ¶ 111; *Hayden Depo. Excerpts 2* 57:23–61:15; *Akram Depo. Excerpts 1* 115:18–116:22, 129:14–25. Plaintiff asked for a letter reflecting this determination. *See PSAF* ¶ 115; *DRPS* ¶ 115; Dkt. # 62-4, Ex. 2. On March 18, Akram provided Plaintiff a letter stating in relevant part:

As previously discussed during out meeting; we are no longer able to accommodate your work restriction at FMC Mission Hills clinic due to operational needs. Your last day in the clinic will be 3/20/2020. At this time you have the following three options:

1.  Find a clinic in the area that is able to accommodate your work restrictions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

       2.       Apply for a leave of absence.

       3.       Apply for Permanent disability.

I sincerely regret that this action is necessary and wish you success in your future. Please feel free to contact me if you have any further questions or concerns. Alternatively, you may contact FKC employee service center at 855-362-6247.

Dkt. # 62-4, Ex. 2; *see DSUF* ¶ 27; *PSGI* ¶ 27.

Plaintiff claims that she was terminated in March 2020. *PSGI* ¶ 42; *PSAF* ¶¶ 111, 115. Defendants, however, contend that Plaintiff was merely told she could no longer be accommodated at the Mission Hills clinic and that Plaintiff remained on leave until May 2021, when the new director of operations administratively separated Plaintiff because she had not worked any shifts in the preceding year. *See DSUF* ¶ 42; *Lyons Decl.* ¶ 9.

In March 2020, another employee who had restrictions, Celia Enriquez ("Enriquez"), also stopped working at the Mission Hills clinic. *See PSAF* ¶ 123; *DRPS* ¶ 123. Plaintiff and Enriquez were the only two employees who stopped working at the Mission Hills clinic in March 2020. *See Akram Depo. Excerpts 1* 106:12–17. Hayden testified that he and Akram also discussed Enriquez's restrictions during their February 18 meeting and that Enriquez was similarly unable to be scheduled as of April 2020 due to her restrictions. *Hayden Depo. Excerpts 2* 26:22–28:12. After Plaintiff and Enriquez stopped working at the Mission Hills clinic, the clinic hired five or six new patient care technicians, none of whom had work restrictions. *PSAF* ¶ 123; *DRPS* ¶ 123.

      E.    <u>Procedural Background</u>

In July 2020, Plaintiff filed suit in California state court.[2] *See generally* Dkt. # 1-1. Defendants then removed to this Court. *See generally* Dkt. # 1.

The operative second amended complaint asserts six causes of action, *see generally Second Amended Complaint*, Dkt. # 42 ("*SAC*"), one of which the parties stipulated to dismiss, *see* Dkts. # 60–61. Five causes of action remain:

---

[2] Although Plaintiff sued multiple defendants, *see generally* Dkt. # 1-1, only BMA Mission Hills and Fresenius remain.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

First Cause of Action: Disability discrimination, Cal. Gov't Code § 12940(a).  *SAC* ¶¶ 27–34.

Second Cause of Action: Failure to provide reasonable accommodation, Cal. Gov't Code § 12940(m).  *SAC* ¶¶ 35–41.

Third Cause of Action: Failure to engage in the interactive process, Cal. Gov't Code § 12940(n).  *SAC* ¶¶ 42–48.

Fourth Cause of Action: Retaliation for requesting accommodation, Cal. Gov't Code § 12940(m).  *SAC* ¶¶ 49–54.

Fifth Cause of Action: Wrongful termination in violation of public policy.  *SAC* 10:9–26.

Defendants now move for summary judgment on each cause of action and as to Plaintiff's request for punitive damages.  *See generally Mot.*

II.    Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case.  *See id.*  If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.  Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|----------|------------------------|------|-------------------|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

*Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III.   Evidentiary Objections

Defendants assert several evidentiary objections along with their reply brief. *See generally* Dkt. # 88-3. To the extent that the Court relies on objected-to evidence, it relies on only admissible evidence and, therefore, **OVERRULES** the objections. *See Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

IV.   Request for Judicial Notice

Along with their motion, Defendants request that the Court take judicial notice of Plaintiff's second amended complaint. *See generally* Dkt. # 62-3. However, "[t]he Court need not take judicial notice of items from its own docket." *Cruz v. Mercedes-Benz USA, LLC*, No. EDCV 21-809 JGB (SHKx), 2021 WL 4816862, at *1 n.1 (C.D. Cal. Aug. 12, 2021) (denying as moot request for judicial notice of the complaint). Accordingly, the Court **DENIES AS MOOT** Defendants' request for judicial notice.

V.   Discussion

The Court addresses each of Plaintiff's causes of action in turn.

A.   First Cause of Action: Disability Discrimination

California's Fair Employment and Housing Act ("FEHA") prohibits employment practices that discriminate against any person because of his or her disability. Cal. Gov't Code § 12940(a). On a motion for summary judgment based on discrimination and retaliation claims, the courts apply the burden-shifting scheme articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002); *Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 234, 244 (2016) (indicating that the *McDonnell Douglas* analysis applies to discrimination and retaliation claims under FEHA). First, the plaintiff has the "initial burden of establishing a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

prima facie case of discrimination [or retaliation]." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)). Second, the burden shifts to the defendant to show either that a plaintiff cannot establish an element of the claim or that there was a "legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Lucent Techs.*, 642 F.3d at 745 (quoting *Avila v. Continental Airlines, Inc.*, 165 Cal. App. 4th 1237, 1247 (2008)). Third, the burden shifts back to the plaintiff to show that "the employer's showing was untrue or pretextual." *Lucent Techs.*, 642 F.3d at 746 (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 225 (1999)).

> i.   *Prima Facie Case*

To establish a prima facie case of disability discrimination, a plaintiff must prove that: "(1) plaintiff suffers from a disability; (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action [e.g., termination of employment] because of the disability." *Prue v. Brady Co./San Diego, Inc.*, 242 Cal. App. 4th 1367, 1378 (2015) (quoting *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (1997)). A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Brundage*, 57 Cal. App. 4th at 235.

Defendants do not challenge the first or third element of Plaintiff's prima facie case but argue that Plaintiff cannot establish the second element because she was unable to perform the essential duties of her job with or without reasonable accommodation. *Mot.* 8:11–26. Plaintiff counters that, even though she could not perform all of the duties of a patient care technician, she could perform the job's essential functions. *Opp.* 15:26–16:9. The Court first addresses (a) the essential functions of the patient care technician role, and then turns to (b) whether Plaintiff was able to perform those functions.

> a.   *Essential Functions of the Patient Care Technician Role*

Defendants contend that the essential functions of the patient care technician role "required heavy lifting and moving of patients; the ability to stand for prolonged periods of time and bend over; the ability to lift chemical and water solutions of up to 30 pounds; and the ability to occasionally move, with assistance, machines and equipment of up to 200 pounds." *Mot.* 8:11–26. Plaintiff counters that the job's essential functions "are to provide patient care, set up dialysis treatment, obtain vital signs, monitor treatment, document treatment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

and provide patient education" but does not directly address whether lifting and moving patients,
standing, bending, or lifting items are required to perform those functions. *See Opp.* 16:3–5.
Because Plaintiff agrees that providing patient care is an essential function of the role, the Court
evaluates whether the requirements identified by Defendants are needed to perform the role's
essential patient care functions.

"Essential functions" refer to "the fundamental job duties of the employment position the
individual with a disability holds or desires." Cal. Gov't Code § 12926(f). Evidence that a job
function is essential may include:

> [1] the employer's judgment, [2] written job descriptions, [3] the amount of time spent
> on the job performing the function, [4] the consequences of not requiring employees
> to perform the function, [5] the terms of a collective bargaining agreement, [6] the
> work experiences of past incumbents in the job, and [7] the current work experience
> of incumbents in similar jobs.

*Atkins v. City of L.A.*, 8 Cal. App. 5th 696, 717–18 (2017) (citing Cal. Gov't Code
§ 12926(f)(2)). Determining whether a job function is essential "is a 'highly fact-specific
inquiry'" and usually no individual factor is dispositive. *Lui v. City & Cnty. of S.F.*, 211 Cal.
App. 4th 962, 971, 975 (2012) (citing *Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir.
2001)). The Court discusses in turn each form of evidence the parties present regarding the
essential functions of the patient care technician role.

### 1.    The Written Job Description

Both parties rely on the written job description for the patient care technician role. *See
Mot.* 8:13–17; *Opp.* 16:3–5. The job description lists numerous duties related to patient care
among the role's "principal duties and responsibilities," including initiating and monitoring
dialysis treatment and obtaining vital signs. *See* Dkt. # 62-4, Ex. 3. The job description states
that the role's "direct patient care" duties "regularly involve[] heavy lifting and moving of
patients" and that the "position requires frequent, prolonged periods of standing" and the ability
to "bend over." *See id.* It also states that employees "may lift chemical and water solutions of
up to 30 lbs. up as high as 5 feet." *Id.* Even assuming that the ability to move machinery of up
to 200 pounds is not required for the role's patient care duties, the job description provides
strong evidence that patient care duties—which Plaintiff identifies as essential—require heavy
lifting and moving of patients and that the role requires prolonged standing and the ability to
bend over.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

2. *The Employer's Judgment*

As to Defendants' judgment, Plaintiff points to Akram's testimony that, "[i]n simple terms," the essential functions of the patient care technician role are "taking care of patients and providing care." *See Opp.* 16:5 (citing *Akram Depo. Excerpts 1* 48:23–49:3). The Court finds this testimony of limited assistance besides reinforcing Plaintiff's view that providing patient care is among the job's essential functions.

Hayden testified that that the "primary responsibilities and core functions" of a patient care technician involve prolonged bending, walking, and squatting, including "bending at the chair side to make patients comfortable" and "[r]etrieving items around the dialysis station." *Hayden Depo. Excerpts 1* 30:17–31:8. He testified that stooping, bending, and walking are "critical components of the [patient care technician] role," including for transferring patients. *Id.* 53:25–54:6. The Court finds that, at a minimum, Hayden's testimony provides support for the notion that Defendants understand the role's essential patient care functions to require bending, prolonged standing or walking, and moving patients. *See Matkovich*, 2020 WL 2519576, at *5 (relying on testimony from a store's general manager that "roughly correspond[ed]" to the employer's judgment about the position's essential functions).

3. *Amount of Time Spent Performing Functions*

Although neither party provided evidence about the amount of time that patient care technicians in general spend lifting and moving patients, standing, bending, or lifting solutions, Plaintiff provided testimony about three of these activities. *See Matkovich*, 2020 WL 2519576, at *5 (noting that evidence of a plaintiff's personal experience on the job may be relevant to the amount of time spent performing job functions). First, Plaintiff testified that her job entailed spending more than seven hours standing and fewer than two hours sitting in a typical day. *See Calderon Depo. Excerpts 1* 109:21–110:16. This evidence strongly supports Defendants' view that prolonged periods of standing are required to perform the essential functions of the role. Second, Plaintiff testified that her role required assisting several patients in and out of wheelchairs per day. *Id.* 105:13–108:5. Third, Plaintiff testified that the role required lifting solutions of up to 30 pounds as high as five feet several times per day—once for each patient—and that she saw approximately nine to twelve patients per day. *Id.* 105:4–6, 109:7–20. This supports the notion that moving patients and lifting solutions of up to 30 pounds are required to perform essential patient care functions. *See Matkovich*, 2020 WL 2519576, at *5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

### 4.   Essential Functions Conclusion

Given this evidence, a jury could not reasonably conclude that lifting and moving patients, bending, and lifting solutions of up to 30 pounds are not required to perform at least the role's patient care duties—which Plaintiff identifies as essential.  Further, based on the job description, Plaintiff's own testimony, and the lack of any contradictory evidence, a jury could not reasonably conclude that prolonged standing is not required to perform the role's essential functions.  Plaintiff thus fails to raise a genuine dispute as to whether these physical demands are required to perform the role's essential functions.

### b.   Plaintiff's Ability to Perform the Role's Essential Functions

The Court next considers whether Plaintiff was able to meet the physical demands required to perform her job's essential functions, with or without reasonable accommodation.  The record contains ample evidence that she was not.

First, Plaintiff's work restrictions stated that she was unable to perform such activities.  Plaintiff's initial restrictions included "no heavy lifting," "no repetitive bending, pulling, stooping, [or] standing" and "no prolonged walking."  Dkt. # 82, Ex. D at 1; *PSAF* ¶ 73; *DRPS* ¶ 73.  The medical examiner's report stated that Plaintiff "shouldn't lift more than about 20-25 pounds" on a regular basis and "should never lift more than 40 pounds."  Dkt. # 82, Ex. C.  The September 2019 report from Plaintiff's doctor contains the following modified restrictions: "[n]o lifting/carrying 10 lbs," "no prolonged standing/walking," "no bending, stooping, climbing," and "no kneeling, squatting, or crawling."  *See* Dkt. # 62-4, Ex. 7.  Thus, Plaintiff's own restrictions indicate that she was unable to engage in heavy lifting and moving of patients, bending, prolonged standing, or lifting solutions of up to 30 pounds—at least solutions over 10 pounds after September 2019.  *See Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 376–77 (2015), *superseded by statute on other grounds* (finding the fact that plaintiff "was absolutely precluded from heavy lifting" based on work restrictions showed he was unable to perform heavy lifting); *Engel v. Time Warner Cable*, No. EDCV 19-074 PSG (KKx), 2020 WL 2114933, at *5–6 (C.D. Cal. Jan. 30, 2020) (concluding that plaintiff could not perform essential job functions given restrictions imposed by his doctor).

Second, Plaintiff's deposition testimony confirms that she could not perform the essential patient care functions given her work restrictions.  Plaintiff was asked:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

If the Mission Hills clinic considered all of your restriction[s] and continued to keep
you in a . . . [patient care technician] role but [] not require you to do any lifting, did
not require you to do any prolonged standing or walking, did not require any bending
or stooping or climbing, and did not require you to do any kneeling, squatting or
crawling, in your opinion, would you be able to perform the patient care duties
without being able to do any of those things combined with the not[] being able to lift
over ten pounds?

*Calderon Depo. Excerpts 1* 169:24–170:8.  Plaintiff responded "no."  *Id.* 170:9.

Third, the record contains other testimony that Plaintiff was unable to move or transfer
patients, bend over, or lift and carry five-gallon jugs with special acid baths for patients.  *See
Hayden Depo. Excerpts 1* 48:1–16, 53:25–54:6, 71:1–22.

The only evidence Plaintiff cites in support of her argument that she could perform the
role's essential functions is her own declaration.  *See Opp.* 16:6–9.  Plaintiff declares that,
despite her restrictions, she "was able to perform the [] job even without accommodations and
had been doing so since 2015."  *Calderon Decl.* ¶ 16.  However, "uncorroborated and self-
serving declarations" are insufficient to create a genuine dispute of material fact.  *King v. United
Parcel Serv.*, 152 Cal. App. 4th 426, 433 (2007); *see also Villiarimo v. Aloha Island Air, Inc.*,
281 F.3d 1054, 1061 (9th Cir. 2002).  Plaintiff's general statement that she "was able to perform
the . . . job," *Calderon Decl.* ¶ 16, without any corroborating evidence, does not create a genuine
dispute as to whether she was able to engage in all of the physical demands required to perform
her job's essential functions.  *See F.T.C. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th
Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting
evidence, is insufficient to create a genuine issue of material fact."); *Khera v. United States*, No.
EDCV 17-1827 JGB (KKx), 2019 WL 2610966, at *5–6 (C.D. Cal. May 10, 2019) (finding
general statements in declaration, without detailed facts or supporting evidence, insufficient to
raise a genuine issue of material fact); *Mann v. United States*, No. 1:19-cv-01354-SKO, 2021
WL 1839709, at *4 (E.D. Cal. May 7, 2021) (same).

Although Plaintiff points to other accommodations that "could have potentially worked,"
she does not explain how these potential accommodations would have enabled her to perform
the essential functions of her job.  *See Opp.* 17:1–4.  Plaintiff suggests that she could have (1)
done more "sit down" tasks or used a scooter to minimize her time standing, (2) been allowed to
take more rest breaks, (3) worked half days or had more days off between shifts, or (4) served as
a "float" patient care technician to cover for other patient care technicians.  *Calderon Decl.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

¶¶ 18–19. While performing more seated tasks or using a scooter may have allowed Plaintiff to stay within her work restriction preventing prolonged standing, prolonged periods of standing were required to perform the job's essential functions. *See* Dkt. # 62-4, Ex. 3. And while taking more breaks, working shorter days, or taking more days off between shifts may also have lessened the strain on Plaintiff, the Court fails to see how any of these proposed accommodations would have enabled Plaintiff to lift and move patients, stand for prolonged periods, bend over, or lift solutions during the time she was actively working. Finally, Plaintiff presents no reason why she could perform the essential functions of a "float" patient care technician, which presumably requires the same physical demands. Because Plaintiff fails to show that any of these proposed accommodations would enable her to perform the job's essential functions, they are not reasonable accommodations. *See Nealy*, 234 Cal. App. 4th at 375–77.

Plaintiff also contends that her "job duties could have been distributed to the other [patient care technicians]." *Opp.* 18:1–2. But employers are not required to "exempt . . . employee[s] from performing essential functions or [] reallocate essential functions to other employees." *Nealy*, 234 Cal. App. 4th at 375 (citing *Dark v. Curry Cnty.*, 451 F.3d 1078, 1089 (9th Cir. 2006)); *see also Lui*, 211 Cal. App. 4th at 985 ("FEHA did not obligate defendant to accommodate plaintiff by excusing him from the performance of essential functions."). The record indicates that Plaintiff was accommodated for several years through modified work duties and having coworkers perform some of her duties required for essential patient care functions, including lifting tasks and moving patients. *See DSUF* ¶ 8; *PSGI* ¶ 8; *Akram Depo. Excerpts 1* 74:3–13, 79:5–13, 82:14–25; *Hayden Depo. Excerpts 1* 29:1–7; *Calderon Depo. Excerpts 1* 128:18–129:18. However, the fact that other employees performed some essential functions of Plaintiff's job for her for a period of time does not mean that Defendants were required to continue accommodating Plaintiff in this manner. *See Urbina v. Comcast Cable Commc'ns Mgmt., LLC*, 788 F. App'x 522, 523 (9th Cir. 2019) ("FEHA does not require an employer to exempt a disabled employee from any essential function of the job or convert a temporary, light-duty accommodation into a permanent position."); *cf. Matkovich*, 2020 WL 2519576, at *7 (finding defendant was not liable for disability discrimination for terminating plaintiff after other employees performed essential job functions for plaintiff for two years).

Lastly, Plaintiff suggests that there were other jobs she could have performed. *See Opp.* 17:11–12. "Reasonable accommodation may also include 'reassignment to a vacant position' if the employee cannot perform the essential functions of his or her position even with accommodation." *Nealy*, 234 Cal. App. 4th at 377 (citing Cal. Gov't Code § 12926(p)(2)). However, FEHA does not require an employer to reassign an employee to another position "if there is no vacant position for which the employee is qualified," nor to promote or create a new

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

position for the employee.  *Id.*  Here, Defendants present evidence that Akram and Lyons
investigated whether other clinics had open positions available that could accommodate
Plaintiff's restrictions but that there were no such vacant positions.  *See Akram Depo. Excerpts 2*
58:3–10; *Lyons Depo. Excerpts 1* 49:24–50:5; *Lyons Decl.* ¶ 7; *Hayden Depo. Excerpts 1*
91:4–9.  Plaintiff does not point to any contrary evidence that there were any vacant positions
available for which she was qualified.  As such, she fails to raise a genuine dispute as to whether
she could have been reasonably accommodated by reassignment.  *See Nealy*, 234 Cal. App. 4th
at 377; *Ceja-Corona v. CVS Pharmacy, Inc.*, 664 F. App'x 649, 650–51 (9th Cir. 2016).

On this record, a jury could not reasonably conclude that Plaintiff was able to engage in
the physical demands required to perform the essential functions of her job, with or without
reasonable accommodation.  As such, Plaintiff has failed to raise a genuine dispute that she was
a qualified individual and cannot establish the second element of her prima facie claim for
disability discrimination.  *See Prue*, 242 Cal. App. 4th at 1378; *Brundage*, 57 Cal. App. 4th at
235.  The Court accordingly **GRANTS** Defendants' motion for summary judgment as to
Plaintiff's first cause of action for disability discrimination.  *See Nealy*, 234 Cal. App. 4th at
378–79.

### B.      Second Cause of Action: Failure to Provide Reasonable Accommodation

Under FEHA, it is unlawful for an employer to fail to make reasonable accommodations
for an employee's known disability.  Cal. Gov't Code § 12940(m)(1).  The elements of a
reasonable accommodation cause of action are: "(1) the employee suffered a disability, (2) the
employee could perform the essential functions of the job with reasonable accommodation, and
(3) the employer failed to reasonably accommodate the employee's disability."  *Nealy*, 234 Cal.
App. 4th at 373.  The employee bears the burden of proving his or her ability to perform the
job's essential functions with reasonable accommodation.  *Nadaf–Rahrov v. Neiman Marcus
Grp.*, 166 Cal. App. 4th 952, 977 (2008); *accord Lui*, 211 Cal. App. 4th at 971; *Ceja-Corona*,
664 F. App'x at 651.  The essential functions analysis for a reasonable accommodation claim is
identical to that of a disability discrimination claim.  *Nealy*, 234 Cal. App. 4th at 378.

As discussed at length above, the record indicates that Plaintiff was unable to engage in
the physical demands required to perform the essential patient care functions of her job with or
without reasonable accommodation.  Plaintiff does not present any reasonable accommodations
that would have enabled her to perform the job's essential functions.  Defendants were not
required to eliminate essential functions of Plaintiff's job, reallocate essential functions of her
job to other employees, reassign her to another position when there were no vacant positions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | | Date | February 15, 2022 |
|---|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | | |

available for which she was qualified, or create a new position to accommodate her. *See Nealy*, 234 Cal. App. 4th at 374–78.

Because Plaintiff cannot satisfy the second element of her failure to provide reasonable accommodation claim, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's second cause of action. *See Nealy*, 234 Cal. App. 4th at 378; *Lui*, 211 Cal. App. 4th at 985; *Ceja-Corona*, 664 F. App'x at 651.

### C.    Third Cause of Action: Failure to Engage in the Interactive Process

It is unlawful under FEHA for an employer "to fail to engage in a timely, good faith, interactive process with [an] employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee" with a known disability.  Cal. Gov't Code § 12940(n).  The interactive process is "an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively."  *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1013 (2009) (citation omitted).  To prevail, "an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred."  *Id.* at 1018–19.  Although an employee is not "'expected to identify and request all possible accommodations during the interactive process itself[,]' . . . the employee should be able to identify specific, available reasonable accommodations through the litigation process, and particularly by the time the parties have conducted discovery and reached the summary judgment stage."  *Nealy*, 234 Cal. App. 4th at 379 (quoting *Scotch*, 173 Cal. App. 4th at 1018); *accord Ceja-Corona*, 664 F. App'x at 651.

As described above, Plaintiff fails to point to a reasonable accommodation that was available when she worked at the Mission Hills clinic and that would have enabled her to perform the essential functions of her job.  Plaintiff's failure to identify an available reasonable accommodation by this stage in the litigation means that her claim for failure to engage in the interactive process cannot survive summary judgment.  *See Scotch*, 173 Cal. App. 4th at 1019 (affirming grant of summary judgment in defendant's favor on failure to engage in interactive process claim because of plaintiff's failure to identify a reasonable accommodation available during the time of interactive process); *Nealy*, 234 Cal. App. 4th at 379–80 (same); *Ceja-Corona*, 664 F. App'x at 651 (same).

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's third cause of action for failure to engage in the interactive process.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

### D.   Fourth Cause of Action: Retaliation for Requesting Accommodation

FEHA makes it unlawful for an employer to retaliate against an employee for engaging in certain protected conduct. *See* Cal. Gov't Code § 12940(h), (m)(2). The *McDonnell Douglas* burden-shifting framework applies to a claim for retaliation under FEHA. *Moore*, 248 Cal. App. 4th at 244.

### i.   *Prima Facie Case*

To establish a prima facie case of retaliation under FEHA, an employee must show that (1) he or she engaged in a protected activity, (2) he or she was subjected to an adverse employment action, and (3) "a causal link existed between the protected activity and the employer's [adverse employment] action." *Scotch*, 173 Cal. App. 4th at 1020 (quoting *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005)).

Defendants do not challenge the first or second element of Plaintiff's prima facie case but argue that Plaintiff cannot establish a causal link between her requests for accommodations and Defendants' determination that Plaintiff could no longer be accommodated at the Mission Hills clinic. *Mot.* 15:17–25. The Court disagrees.

Plaintiff's retaliation claim is premised on her request for accommodations related to her latest work restrictions, including that she not lift more than ten pounds. *See SAC* ¶¶ 51–52. Plaintiff contends that she informed Akram of her modified work restrictions in September 2019. *See Opp.* 4:21–28; *PSGI* ¶ 14; *Akram Depo. Excerpts 1* 65:11–66:10. Approximately six months later, in March 2020, Plaintiff was told she could no longer be accommodated at the Mission Hills clinic—which Plaintiff understood to be her termination. *See PSAF* ¶ 111; *PSGD* ¶ 111. The evidentiary bar for establishing a prima facie case of retaliation is low, and California courts have held that timing alone is sufficient to establish a causal connection. *See, e.g.*, *Hawkins v. City of L.A.*, 40 Cal. App. 5th 384, 394 (2019) ("Circumstantial evidence such as proximity in time between protected activity and alleged retaliation may establish a causal link."); *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 353 (2008) ("Because the employee's burden of establishing a prima facie case under *McDonnell Douglas* is fairly minimal, the temporal proximity between an employee's [protected activity] and a subsequent termination may satisfy the causation requirement at the first step of the burden-shifting process."). Courts have found similar lengths of time sufficient to establish a prima facie case of retaliation. *See Flores v. City of Westminster,* 873 F.3d 739, 750 (9th Cir. 2017) (five months between protected

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

activity and first adverse employment action was sufficient for a jury to find causal link satisfied for FEHA retaliation claim); *cf. Nadaf-Rahrov*, 166 Cal. App. 4th at 990 (assuming for purposes of motion that plaintiff established prima facie case through six-month period between accommodation request and termination).

Therefore, the Court finds the temporal proximity between Plaintiff's request for accommodations in September 2019 and Defendants' adverse employment action in March 2020 sufficient to establish the disputed causation element of her prima facie case.

*ii.     Legitimate, Nonretaliatory Reason*

The burden now shifts to Defendants to provide a "legitimate, non[retaliatory] reason for [their] decision" that Plaintiff could not be accommodated at the Mission Hills clinic. *See Lucent Techs.*, 642 F.3d at 745. The Court finds that Defendants have done so.

Defendants assert that they determined Plaintiff was no longer able to be accommodated at the Mission Hills clinic because she was unable to perform the essential functions of her job and the clinic could no longer continue to have other employees perform the essential functions of her job for Plaintiff, "particularly in light of the burgeoning COVID-19 pandemic." *See Mot.* 9:14–17, 15:21–24. Plaintiff challenges this reason on the grounds that Defendants did not plead or prove an "undue burden" defense and that mitigation, finances, and the COVID-19 pandemic did not factor into Defendants' decision as to whether Plaintiff could be accommodated. *Opp.* 19:13–21:17.

First, Defendants counter that they have not raised an undue burden defense, which "only applies to *reasonable* accommodations." *Reply* 4:3–8. The Court agrees. *See* Cal. Gov't Code § 12940(m)(1) (indicating that although it is unlawful for an employer to "fail to make *reasonable* accommodation" for an employee's known disability, FEHA does not "require an accommodation that is demonstrated by the employer . . . to produce undue hardship"(emphasis added)); *cf. Atkins*, 8 Cal. App. 5th at 733 (noting that defendants failed to demonstrate "that any hardship was sufficient to make an otherwise reasonable accommodation unreasonable"). Because Plaintiff has failed to identify a reasonable accommodation, Defendants were not required to prove that her suggested accommodations would have imposed an undue burden or hardship.

Next, although the record indicates that the Mission Hill clinic's financial and mitigation status did not directly impact Defendants' determination, *PSAF* ¶ 116; *DRPS* ¶ 116; *Hayden Depo. Excerpts 2* 67:20–68:4, Defendants have still raised a legitimate, nonretaliatory reason for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

their determination. Although the clinic's operational needs did not change during mitigation, *PSAF* ¶ 88; *DRPS* ¶ 88, Akram informed Hayden during his first visit to the clinic on February 18, 2020 that Plaintiff's inability to perform her primary work responsibilities was already hindering the clinic's operational needs, in part because she required help from her coworkers to perform her job duties, *see Hayden Depo. Excerpts 1* 28:13–29:11, 30:17–32:17, 48:1–16. Thus, the record indicates that Defendants' proffered reason—that Plaintiff could not perform the essential functions of her job and that the clinic was no longer able to accommodate her by having other employees perform these functions for her—existed before the clinic entered into mitigation and regardless of the clinic's mitigation or financial status.

Similarly, the record indicates that Plaintiff was already unable to perform the essential functions of her job before the COVID-19 pandemic. And regardless of whether the COVID-19 pandemic made it less feasible for Plaintiff to rely on coworkers to perform her essential job functions, the record still indicates that Plaintiff was unable to perform these essential functions at least as early as September 2019.

In sum, Defendants have met their burden of providing a legitimate, nonretaliatory reason for the adverse employment action—Plaintiff's inability to perform the essential functions of her job with or without reasonable accommodation. *See Ceja-Corona*, 664 F. App'x at 651 (finding defendant "offered a legitimate, non-retaliatory reason for terminating [plaintiff]: no reasonable accommodation existed"); *Knight v. Air Prods. & Chems., Inc.*, CV 20-4953 DSF (Ex), 2021 WL 3021283, at *10 (C.D. Cal. June 21, 2021) (defendant offered a legitimate, nondiscriminatory reason for terminating plaintiff because it produced evidence plaintiff could not perform job's essential functions).

### iii.    Pretext

Because Defendant has provided a legitimate, nonretaliatory reason for the adverse employment action, Plaintiff must now demonstrate that Defendant's "showing was untrue or pretextual." *See Lucent Techs.*, 642 F.3d at 746. To overcome the legitimate reasons put forth by Defendant, Plaintiff's "evidence must be both *specific and substantial*." *Aragon*, 292 F.3d at 659. She "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Lucent Techs.*, 642 F.3d at 746.

Plaintiff argues that Defendants' reason was pretextual for several reasons. *Opp.* 21:18–23:2. The Court considers each reason in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

#### a.    *100 Percent Healed Policy*

Plaintiff first argues that Defendants "sought to have a 100% fully healed policy." *Opp.* 21:21–7.  This assertion is unsupported by the record.

"[A] 'policy requiring an employee be 100 percent healed before returning to work is a per se violation' [of FEHA] when the employer does not make an individualized assessment of whether the employee can perform essential functions of [the] position with accommodation." *Lucent Techs.*, 642 F.3d at 747–48 (citing *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 49 n.11 (2006)).

Plaintiff fails to raise a genuine dispute that Defendants had such a policy.  Plaintiff first points to evidence that Akram and Hayden discussed the Mission Hill clinic's need for patient care technicians to perform the full range of duties and that Akram informed Plaintiff as much. *See Opp.* 21:23–22:1 (citing *Akram Depo. Excerpts 1* 126:20–9, 129:12–25).  But Plaintiff fails to explain how this amounts to a "100 percent healed" policy.  Rather, Akram's testimony comports with Defendants' explanation that they needed patient care technicians to be able to perform the essential functions of their jobs to meet patient needs.  Plaintiff also declares that Akram told Plaintiff she "needed to be 100 percent healthy to work at the clinic" and that Hayden told Plaintiff she needed to have her doctor remove her restrictions if she wanted to keep her job.  *Calderon Decl.* ¶ 24.  But without any further evidence to support these assertions, Plaintiff's "uncorroborated and self-serving declaration[]" is insufficient to create a genuine dispute of material fact that Defendants had a 100 percent healed policy.  *See King*, 152 Cal. App. 4th at 433; *see also Villiarimo*, 281 F.3d at 1061; *Engel*, 2020 WL 2114933, at *7.

On this record, a jury could not reasonably conclude that Defendants had a 100 percent healed policy instead of making an individualized assessment that Plaintiff was unable to perform the essential functions of her job with accommodation.  Thus, the Court finds this insufficient to show pretext.  *See Lucent Techs.*, 642 F.3d at 747–48.

#### b.    *Defendants' Failure to Follow Their Own Procedures*

Plaintiff next contends that Defendants' failure to follow their own procedures provides evidence of pretext.  *Opp.* 14:5–16, 22:13–15.  The Court disagrees.

"A defendant's failure to follow its own policies or procedures *may* also provide evidence of pretext."  *Moore*, 248 Cal. App. 4th at 239 (emphasis added).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

First, Plaintiff points to Lyons' testimony that "[u]nder the normal [Americans with Disabilities Act] process," employees receive a questionnaire and job description to give to their medical providers to fill out. *Opp.* 14:5–7 (citing *Lyons Depo. Excerpts 2* 80:4–10). Although there is no evidence that Defendants gave Plaintiff such a questionnaire for her doctor to complete, *id.* 82:6–14; *PSAF* ¶ 84; *DRPS* ¶ 84, Plaintiff does not explain whether the "normal . . . process" Lyons outlined was applicable to all employees. *Cf. Moore*, 248 Cal. App. 4th at 239–41 (finding evidence that defendant acted differently than what its "stated policy *requires*" was sufficient for a jury to conclude that defendant's proffered reason for terminating plaintiff was pretextual) (emphasis added). Moreover, the record indicates that Defendants were already aware of Plaintiff's work restrictions because her workers' compensation settlement included modified work duties based on the medical examiner's findings. *See DSUF* ¶ 8; *PSGI* ¶ 8; *PSAF* ¶ 73; *DRPS* ¶ 73; Dkt. # 82, Ex. C. Thus, there does not appear to have been a need for Defendants to provide a questionnaire for Plaintiff's doctor to fill out. As such, the Court does not find that Defendants' failure to follow their normal process by providing Plaintiff with a questionnaire presents the sort of "*specific and substantial*" evidence needed to demonstrate pretext. *See Aragon*, 292 F.3d at 659.

Second, Plaintiff claims that Defendants violated their own reasonable accommodation policies by not providing her with a memorandum, letter, or "job offer" regarding her requested accommodations. *Opp.* 14:7–9. But the only evidence of such policies Plaintiff cites is Lyons' testimony that, after a manager communicates with the employee about whether his or her request can be accommodated, the "employee *may* be provided a memo . . . or a letter" and explaining that "[j]ob offer[s] are accommodations that were offered to an employee." *Lyons Depo. Excerpts 2* 81:3–11. 88:12–13 (emphasis added). Moreover, upon Plaintiff's request, Defendants provided her with a letter in March 2020 explaining that she could no longer be accommodated at the Mission Hills clinic and offering other accommodation options. *See PSAF* ¶ 115; *DRPS* ¶ 115; Dkt. # 62-4, Ex. 2. Thus, the record does not indicate that Defendants violated any policy by failing to provide Plaintiff with a letter, memorandum, or job offer regarding her requested accommodations and the accommodation options offered by Defendants.

Third, Plaintiff points to the fact that Sedgwick was not involved in her reasonable accommodations process as evidence that Defendants violated their accommodation policies. *See Opp.* 14:11–16. Hayden testified that this was because Plaintiff did not open a claim with Sedgwick. *Hayden Depo. Excerpts 2* 81:20–24. Plaintiff does not contend that she opened a case with Sedgwick but argues that "Akram could have but didn't open up a case with Sedgwick" on Plaintiff's behalf. *See Opp.* 14:15–16. But Plaintiff points to no evidence that Defendants' policy *required* managers to open cases with Sedgwick on an employee's behalf.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

Instead, Hayden testified that although a manager *can* open a case with Sedgwick on an
employee's behalf, this "is typically [done in] an emergen[cy] situation," such as when the
employee is unable to contact human resources or a "significant event prevent[s] them from
opening their own case." *Hayden Depo. Excerpts 2* 80:24–81:3. Plaintiff presents no evidence
that she was unable to open a case on her own behalf. Moreover, Akram testified that she
suggested to Plaintiff on multiple occasions that she contact Sedgwick about her
accommodations. *Akram Depo. Excerpts 1* 121:7–20, 132:14–18. Thus, the Court does not find
that Defendants' failure to open a case with Sedgwick on Plaintiff's behalf provides evidence of
pretext.

     *c. Termination of Another Employee with Restrictions*

   Plaintiff next points to the fact that Enriquez, an employee who also had work
restrictions, was terminated in March 2020 and that Defendants then hired several new patient
care technicians who did not have work restrictions. *Opp.* 22:19–24.

   The Court agrees with Defendants that, without further information about Enriquez's
restrictions or her ability to perform her essential job functions, the fact that Enriquez was also
terminated in March 2020 is insufficient to demonstrate pretext. *See Reply* 5:19–24. Plaintiff
presents no evidence to indicate that Enriquez was terminated because of a disability or a request
for reasonable accommodations. The Court also fails to see how the subsequent hiring of patient
care technicians without work restrictions is inconsistent with Defendants' proffered explanation
that Plaintiff was no longer able to be accommodated because she could not perform her
essential job functions. Thus, the Court finds that Defendants' termination of Enriquez and
hiring of employees without restrictions does not indicate the sort of "weaknesses,
implausibilities, inconsistencies, incoherencies, or contradictions" needed to rebut Defendant's
proffered legitimate, nonretaliatory reason for terminating Plaintiff. *See Lucent Techs.*, 642 F.3d
at 746.

     *d. Hayden's February 2020 E-mail*

   Finally, Plaintiff points to an e-mail Hayden sent in February 2020. *Opp.* 22:25–23:2.
On February 18, 2020, during his first visit to the Mission Hills clinic, Hayden met with Akram
and learned about Plaintiff's work restrictions. *See DSUF* ¶ 23; *PSGI* ¶ 23; *Hayden Depo.
Excerpts 1* 28:3–12, 31:12–17. Later that day, Hayden e-mailed Woodman from human
resources a copy of Plaintiff's restrictions, which read, "My hope is we can make the case that

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

the business can no longer support these accommodations yet would appreciate your guidance on how to proceed." *See* Dkt. # 82, Ex. H.

The Court finds that this e-mail fails to demonstrate pretext and is instead consistent with Defendants' proffered reason—that Plaintiff could not perform her essential job functions. Hayden sent this e-mail after Akram informed him that Plaintiff could not perform her primary job responsibilities and required coworkers to perform those responsibilities for her, straining the clinic's ability to meet patient needs. *See Hayden Depo. Excerpts 1* 28:13–29:11, 30:17–32:17, 48:1–16, 53:25–54:6. As previously discussed, the record confirms that Plaintiff was already unable to perform the essential functions of her job with or without reasonable accommodation well before Hayden's February 2020 e-mail, and Defendants were not required to continue having other employees perform essential functions of Plaintiff's job for her. Even viewed in the light most favorable to Plaintiff, the Court does not find that this e-mail, absent additional support, constitutes the sort of specific and substantial evidence needed to establish pretext. Thus, the Court finds that Hayden's e-mail is insufficient to demonstrate that Defendants' proffered reason for terminating Plaintiff was pretextual. *See Engel*, 2020 WL 2114933, at *8 (determining that e-mail between defendant's human resources personnel asking if interactive process had been done with two employees to see if "we can potentially get them off our books," while callous, did not demonstrate pretext for FEHA disability discrimination or retaliation claims).

In sum, Plaintiff has not provided the specific and substantial evidence of pretext needed to overcome the legitimate, nonretaliatory reason for her termination set forth by Defendants. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's fourth cause of action for retaliation in violation of FEHA.

E.      Fifth Cause of Action: Wrongful Termination in Violation of Public Policy

Plaintiff's claim for wrongful termination in violation of public policy fails because the Court finds no underlying statute that was violated. *See Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990) (rejecting "a cause of action simply for 'wrongful termination' . . . because it merely duplicates the additional claims based upon the alleged wrongful termination"); *Hanson*, 74 Cal. App. 4th at 229 ("[B]ecause [plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails."). Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's fifth cause of action for wrongful termination in violation of public policy.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-7869 PSG (JEMx) | Date | February 15, 2022 |
|---|---|---|---|
| Title | Dolores Calderon v. Fresenius USA, Inc. et al. | | |

V.      Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment in its entirety.[3]  This order closes the case.

**IT IS SO ORDERED.**

---

[3]  Having granted summary judgment on each of Plaintiff's claims, the Court need not reach Defendants' request for summary judgment as to Plaintiff's claim for punitive damages.  *See Lattimore v. Euramax Int'l, Inc.*, No. EDCV 16-2156 PSG (KKx), 2017 WL 6886081, at *13 n.3 (C.D. Cal. Nov. 8, 2017).